In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-1821

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KENNETH ROSS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05-CR-24—**Charles N. Clevert Jr.**, *Judge.*

ARGUED DECEMBER 8, 2006—DECIDED JANUARY 29, 2007

Before BAUER, FLAUM, and KANNE, *Circuit Judges.*

FLAUM, *Circuit Judge.* On October 24, 2005, Kenneth Ross pled guilty to three counts of making false statements to the FBI, in violation of 18 U.S.C. §1001. On March 13, 2006, the district court sentenced him to 60 months' imprisonment, followed by three years of supervised release. Considering Ross's personal background as well as the facts underlying his conviction, the court imposed as a special condition of supervised release that Ross participate in a sex offender mental health assessment and any necessary treatment. Ross appeals the court's imposition of sex offender assessment and treatment. We affirm.

## I. BACKGROUND

Between March and September of 2004, Kenneth Ross made several false statements to FBI Special Agent Jack Felske. Ross told Felske that he and others had buried a murdered child's body in Minnesota. Though he identified an actual missing child and specified a burial location, in reality, he had no knowledge of or involvement in the child's disappearance. After admitting that his prior statements were false, Ross changed his story and said that he had actually buried the child at a Milwaukee construction site. The FBI's further investigation of the claim revealed that Ross had once again lied.

In another FBI interview, Ross claimed that he was cooperating with the FBI to protect his son from a child sex ring with which Ross was associated. He said that members of the sex ring were holding his son somewhere in Oregon. Ross then showed Felske a photograph of a young boy and identified him by name. Further investigation established that the individual in the photograph was not Ross's son. In fact, Ross had obtained the photograph eight years earlier when he was acquainted with the boy's family.

Once Ross pled guilty, the probation office prepared a pre-sentence investigation report ("PSR"), which detailed the facts underlying Ross's conviction as well as his criminal and personal history. The PSR disclosed that since 1981, Ross had been convicted of numerous offenses including forgery, arson, petty theft, writing worthless checks, operating a vehicle without the owner's consent, and theft by fraud. Notably, Ross had never been charged with or convicted of any sex offense. The PSR also indicated that in 1998, while Ross was incarcerated in a Wisconsin prison, he received a violation report for engaging in sexual activities with other inmates. A majority of the inmates with whom Ross had sexual contact were

victims of sexual abuse or in the sex offender treatment program. Before exchanging sexual favors with them, Ross would recruit the inmates to join the Gothic Naturalists, a religious group of which he claimed to be a "High Priest."

In 2003, Ross underwent a psychological evaluation after serving time in prison for an unrelated conviction. The psychological assessment described Ross as a "man of above average intelligence with no major affective or thought disorder." Although it labeled him a "bright, highly manipulative individual who is likely to prey on vulnerable dependent individuals," the assessment stated that he was unlikely to "act out in a sexually violent manner."

At Ross's sentencing hearing, the district court required as a special condition of supervised release that Ross participate in a program of sex offender mental health treatment. The district court stated:

> Let me add hastily, in light of your personal background you're not to associate or have any type of conduct with any person under the age of 18 without adult supervision or approval by your supervising probation officer. You're required to participate in a program of sex offender mental health assessment and treatment as approved by your supervising probation officer.

Transcript of Sentencing Hearing at 20-21, *United States v. Ross* (No. 05-CR-24) (E.D. Wis. 2005). Ross then filed this appeal.

## II. DISCUSSION

As a threshold issue, the parties set forth their analyses under different standards of review. Normally, we review a district court's decision to impose a special condition of

supervised release for abuse of discretion. *See United States v. Angle*, 234 F.3d 326, 346 (7th Cir. 2000); *United States v. Wilson,* 154 F.3d 658, 667 (7th Cir. 1998). The government contends, however, that we should review for plain error only because Ross did not object to the special condition of supervised release. *See, e.g., United States v. McKissic*, 428 F.3d 719, 721-22 (7th Cir. 2005). Ross does not claim to have objected below. As result, we agree with the government that plain error review is appropriate. A plain error is one that not only is clear and obvious, but also is of such significance that a failure to correct it may result in a miscarriage of justice. *United States v. Guy*, 174 F.3d 859, 861 (7th Cir. 1999).

Under 18 U.S.C. § 3583(d), a sentencing court has discretion to impose appropriate conditions of supervised release, to the extent that such conditions (1) are reasonably related to the factors identified in § 3553(a), including the nature and circumstances of the offense and the history and characteristics of the defendant; (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a); and (3) are consistent with the policy statements issued by the Sentencing Commission. *See Angle*, 234 F.3d at 346. Policies emphasized by the Sentencing Commission include deterrence, rehabilitation, and protecting the public.

Ross argues that the district court's imposition of sex offender treatment did not meet the criteria necessary for imposing a special condition of supervised release. First, he claims, sex offender treatment is not reasonably related to the offense of lying to the FBI. Ross correctly observes that nothing in the indictment, plea agreement, or PSR suggested that any sexual misconduct was part of the charged offense.

Second, Ross argues, sex offender treatment is not reasonably related to his personal history. In particular, he

emphasizes the fact that he has never been charged with or convicted of a sex offense. He also points out that the psychological assessment performed on him upon his release from prison in 2003 stated that "it did not appear the defendant would act out in a sexually violent manner[1]." Ross continues by attacking the district court's reliance on Ross's 1998 prison violation report, noting that the sexual conduct at issue did not involve a minor and was consensual.

Finally, Ross contends, requiring sex offender treatment in this case will not help protect the public or rehabilitate Ross. In other words, Ross maintains that he poses no danger to the public and, thus, does not need to be rehabilitated. Therefore, he concludes, sex offender treatment is a greater deprivation of liberty than is necessary under the circumstances.

The government disagrees with Ross's analysis, arguing that numerous facts support the imposition of sex offender treatment. First, although Ross's conviction does not, on its face, suggest any sexual misconduct, Ross made a number of statements to the FBI regarding his association with and participation in a child sex ring. Second, it continues, Ross's "sexual misconduct" while in prison, which the government characterizes as "preying on fellow inmates who were victims of sexual abuse or who were in the sex offender treatment program," indicates Ross's need for treatment. Finally, it contends that the district court's sentence entailed a relatively minor deprivation of liberty and was reasonably related to the goals of providing treatment to Ross and protecting the public from further crimes.

---

[1]  In our estimation, Ross's 2003 psychological assessment does not demonstrate that he is unlikely to commit a sexual offense. Although the report deems Ross unlikely to act out in a sexually violent manner, not all sexual offenses are violent.

Although we have not had occasion to decide whether sex offender treatment may be imposed as a special condition of supervised released where the offense of conviction is not a sex offense, other circuits have. In *United States v. Carter*, 463 F.3d 526, 527 (6th Cir. 2006), the defendant pled guilty to being a felon in possession of a firearm. His criminal history included two seventeen-year-old sex offenses, and the district court ordered sex offender treatment based on those offenses. *Id.* at 530. The Sixth Circuit vacated the district court's imposition of sex offender treatment, holding that it was not reasonably related to the defendant's offense of conviction or criminal history. *Id.* It noted that sex offender treatment was not reasonably related to being a felon in possession of a firearm and then determined that the remoteness of the prior sex crimes destroyed any reasonable relationship between sex offender treatment and deterrence, public protection, or rehabilitation. *Id.* at 530-32.

*Carter* is distinguishable from this case for a few reasons. First, the supervisory condition in *Carter* was vacated under an abuse of discretion standard of review. By contrast, review in this case is for plain error, meaning that we will reverse only if the district court's decision threatens a miscarriage of justice. Presumably, Ross would only have to undergo sex offender treatment in the event that the court-ordered evaluation finds such treatment necessary, and that does not constitute a miscarriage of justice. Second, the facts underlying the offense of conviction in *Carter* raised no "red flags," whereas here Ross's lies to the FBI included claims that he buried a murdered child and was involved with a child sex ring. Moreover, the troublesome facts underlying Ross's conviction were by no means remote. Accordingly, *Carter* is of no help to Ross.

The First Circuit's holding in *United States v. Prochner*, 417 F.3d 54 (1st Cir. 2005), supports affirming the special condition in this case. In *Prochner*, the defendant was convicted of credit card fraud, and the record contained no direct evidence that the defendant engaged in inappropriate conduct with minors. *Id.* at 63-64. Nevertheless, his work history showed frequent contact with young boys, and his journal expressed sexual fantasies about adolescent males. *Id.* This was enough, the court reasoned, under a plain error standard, to affirm the imposition of sex offender treatment, because the district court "could reasonably believe that Prochner might pose a threat to children." *Id.* at 64; *see also United States v. York*, 357 F.3d 14 (1st Cir. 2004) (approving sex offender treatment for a defendant convicted of mailing threatening letters to his ex-wife, even though the offense of conviction was not sexual).

In this case, as in *Prochner*, the district court considered evidence suggesting that Ross fantasized about crimes against children.[2] We agree with the First Circuit's conclusion that evidence of such fantasies is sufficient to warrant sex offender treatment where review is for plain error. Although the imposition of sex offender treatment in this case is somewhat unusual given that the offense of conviction, on its face, is not sexual in nature, the facts underlying the conviction convince us that the sentence will not result in a miscarriage of justice.

---

[2] Because the underlying facts of the conviction are sufficient to support the imposition of sex offender treatment under plain error review, we do not consider the probative value, if any, of Ross's sexual conduct in prison.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's imposition of a sex offender assessment followed by treatment, if necessary.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*