In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-3229

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MONTARICO C. JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 12 CR 40004 — **J. Phil Gilbert**, *Judge.*

ARGUED DECEMBER 9, 2013 — DECIDED JUNE 24, 2014

Before WILLIAMS, SYKES, and HAMILTON, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* After a jury convicted him of distributing three grams of crack cocaine and being a felon in possession of a firearm, Montarico Johnson received a 210-month sentence. He appeals on several grounds. The government had exercised peremptory challenges against two female prospective jurors, but Johnson failed to show a prima facie case of discrimination in jury selection on the basis of gender so the court did not need to evaluate the reasons

for the government's strikes. As for his sentence, which was largely driven by his career offender status, we find that the district court understood Johnson's request for a below-guidelines sentence but rejected it in light of Johnson's criminal history, and we affirm his prison term. The special condition of supervised release requiring that Johnson participate in a sex offender treatment program is another story, however. Johnson's only sex-related offense came fifteen years earlier when he received a misdemeanor conviction and a probation-only sentence because, at the age of seventeen, he had sex with a girl over thirteen and less than seventeen years old. Guided in part by decisions we made after the sentencing in this case took place, we conclude that the record does not support a connection between mandatory sex-offender treatment and the 18 U.S.C. § 3553(a) factors. We therefore vacate this condition of supervised release, as well as other conditions not mentioned in the oral pronouncement of sentence. In all other respects we affirm his conviction and sentence, as we discuss in more detail below.

## I. BACKGROUND

Montarico Johnson was charged in a superseding indictment with one count of distributing crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). The panel of prospective jurors consisted of thirty-three people. Sixteen members of the venire were male, and seventeen were female. The judge used a system to select the jury in which the jurors were chosen in panels of four. With the government proceeding first, one party tendered to the other party a group of four venirepersons. The other party could use peremptory challenges as it saw fit

and then tender back four venirepersons. This process continued until both sides agreed on four jurors, and those four were placed on the jury. The process continued until twelve jurors were selected.

The government tendered two men and two women in the first round, the defense had no objection, and those four persons were seated on the jury. The defense then tendered the next four venirepersons. The government exercised a peremptory challenge on venireperson #7, who was male. The government then tendered back two males and two females, there were no objections, and those jurors were seated.

In the next round, the government exercised peremptory challenges on venirepersons #11 (male), #12 (female), #14 (female), and #15 (male). The defense asked the court to question the government as to its reasons for using peremptory challenges to ensure the government was not using its challenges on the basis of gender or race. The court responded that two of the persons struck were male and two were female, and all were of the same race, so there was no basis for the defense's request. The prosecutor offered to make a record of his reasons for exercising the peremptory challenges, and the judge stated he left that decision up to the government. The prosecutor then stated venireperson #11 had previously found a defendant not guilty, #12 recounted that she testified for a defendant in a criminal case, #14 stated that she works with troubled children, including those involved with drugs, and #15 has a cousin who is involved with drugs and had served jail time.

At trial, law enforcement officials and confidential source Ronnie Bridges detailed Bridges's purchase of crack cocaine

and a Glock 9mm firearm from Johnson on February 18, 2010. The jury also saw a video of the purchase, among other evidence. The jury found Johnson guilty on both counts. The district court sentenced Johnson to 210 months' imprisonment followed by three years of supervised release. The court imposed special conditions of supervised release including that Johnson participate in an approved sexual offender treatment program, as directed by the probation officer. Johnson appeals.

## II. ANALYSIS

### A. Government's Use of Peremptory Challenges Was Proper

Johnson first argues that the prosecutor used peremptory challenges during jury selection in a manner that was discriminatory against prospective female jurors. In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court held that the government's exercise of peremptory challenges on the basis of race violates a defendant's right to equal protection. The Court subsequently extended *Batson*'s rule to gender-based peremptory strikes. *J.E.B. v. Alabama*, 511 U.S. 127, 146 (1994). As a result, a litigant may not use peremptory challenges to exclude a juror on the basis of gender. *Id.*; *Winston v. Boatwright*, 649 F.3d 618, 622 (7th Cir. 2011).

*Batson* provided a three-step process for a district court to use when evaluating a challenge that a prosecutor exercised a peremptory challenge on the basis of race. We use that process to evaluate challenges based on gender as well. *See J.E.B.*, 511 U.S. at 144–45; *United States v. Brisk*, 171 F.3d 514, 522 (7th Cir. 1999). First, the defendant must make a prima facie case of discrimination in selection of the venire. *Batson*,

476 U.S. at 93–94. Next, if that showing has been made, the burden shifts to the government to offer a non-discriminatory explanation for the strike. *Id.* at 97. If the government does so, the court must then decide whether the defendant has established that the government's stated reason is pretext for discrimination. *Id.* at 98.

Johnson argues that the district court erred by not evaluating the credibility of the government's justifications for excluding two female venirepersons. Johnson suggests that because the government offered non-discriminatory reasons for its peremptory strikes, whether he made out a prima facie case of discrimination is moot. From that he argues that the case must be remanded for further proceedings because the district court did not make an explicit finding as to whether the government's proferred reasons were pretextual. In support, Johnson points to cases such as *Snyder v. Louisiana*, 552 U.S. 472, 485–86 (2008), and *United States v. McMath*, 559 F.3d 657, 666 (7th Cir. 2009), where the denials of *Batson* challenges without judicial findings regarding the credibility of the government's proffered justification for the strike were reversed and remanded for further proceedings.

But unlike the defendants in those cases, Johnson failed to make a prima facie showing of discrimination during jury selection. We look at all relevant circumstances when determining whether the requisite prima facie showing has been made. *Batson*, 476 U.S. at 96. For example, a pattern of strikes against members of a particular gender may give rise to an inference of discrimination, and similarly so may a disproportionate number of peremptory challenges exercised to exclude members of a particular group. *Harris v. Hardy*, 680 F.3d 942, 949–50 (7th Cir. 2012). So too may a prosecutor's

comments and statements. *See Batson*, 476 U.S. at 97. The test is not rigorous. *McMath*, 559 F.3d at 664. Nonetheless, Johnson fails to pass it. He maintains on appeal that the government discriminated against women in exercising its peremptory challenges. But in the round at issue, the government used peremptory challenges to strike an equal number of men and women; it struck two men and two women. And its only use of a peremptory challenge before that round was to strike a male juror. Up to that point, and overall, the government exercised more peremptory challenges against men (three) than it did against women (two), so the way the government used its peremptory challenges does not raise a suggestion of discrimination on the basis of gender. Nor do the prosecutor's questions and statements, or anything else in the record, raise any inference of intentional discrimination. There is no prima facie case of discrimination against female venirepersons here.

That the judge allowed the government to assert for the record its reasons for striking the venirepersons did not obligate the judge to evaluate those reasons. It also did not relieve Johnson of his burden to demonstrate a prima face case, nor did it mean the judge believed Johnson had met his burden. The judge correctly recognized that Johnson had not established a prima facie case, so there was no need to go further. *Cf. J.E.B.*, 511 U.S. at 144–45 ("As with race-based *Batson* claims, a party alleging gender discrimination must make a prima facie showing of intentional discrimination before the party exercising the challenge is required to explain the basis for the strike."). Because there was no prima facie case of discrimination, we decline Johnson's request to remand for further proceedings on this issue.

### B. Request for Variance from Career Offender Guide-line Properly Denied

Johnson also argues that the district court failed to sufficiently address his request for a variance from his advisory guidelines range, a range that was largely driven by his career offender status. In particular, he suggests that the district court should have explicitly considered, in choosing Johnson's sentence, the United States Sentencing Commission's fifteen-year review of sentencing data. We review this argument de novo. *United States v. Spiller*, 732 F.3d 767, 769 (7th Cir. 2013). "The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). While a judge "who fails to mention a ground of recognized legal merit (provided it has a factual basis) is likely to have committed an error," *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005), a judge need not spend time addressing an argument if "'anyone acquainted with the facts would have known without being told why the judge had not accepted the argument,'" *United States v Castaldi*, 743 F.3d 589, 595 (7th Cir. 2013) (quoting *Cunningham*, 429 F.3d at 679).

Johnson's career offender status meant that his advisory guidelines range was 210 to 240 months' imprisonment. Had he not been a career offender, his crack cocaine amount of three grams combined with a criminal history category of III would have yielded a much lower advisory guidelines range. But Johnson's prior convictions for aggravated battery and home invasion made him a career offender under the United States Sentencing Guidelines. *See* U.S.S.G. § 4B1.1.

At the sentencing hearing, after the court concluded that Johnson was a career offender, the parties expressed their positions as to the appropriate sentence. The government requested a sentence of 210 months' imprisonment. Johnson's counsel requested a downward variance based on Johnson's family situation. Counsel also referred to a fifteen-year study conducted by the United States Sentencing Commission and its conclusion that long terms of imprisonment for low-level drug dealers do little to prevent drug sales,[1] although he did not cite the study by name or present a copy to the district court. Johnson's only argument regarding his career offender status in his written objections to the Presentence Report had been that his home invasion conviction did not constitute a crime of violence. (He does not challenge the career offender finding on appeal.)

The district court addressed Johnson and explained the reasons for its sentence. The court pointed to Johnson's current crimes and his prior convictions for criminal sexual abuse, home invasion, and aggravated battery. It also noted that the guidelines did not take into account the fact that Johnson possessed a firearm during the instant offense in light of his career offender status. The court said that Johnson had been involved with the criminal justice system since he was at least seventeen years old and had not learned his lesson from previous convictions. The court concluded by stating that "after considering all the information in the

---

[1] *See* United States Sentencing Commission, *Fifteen Years of Guideline Sentencing: An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Sentencing Reform,* Nov. 2004, at 134, *available at* http://www.ussc.gov/research-and-publications/research-projects-and-surveys/miscellaneous/fifteen-years-guidelines-sentencing.

presentence report, including guideline computations and factors set forth in 18 U.S.C. § 3553(a), *even considering the request of your counsel for a variance below the guidelines range*, the Court's considered that, pursuant to the Sentencing Reform Act of 1984, it will be the judgment of this Court defendant Montarico C. Johnson is hereby committed to the custody of the Bureau of Prisons to be in prison for a term of 210 months… ." (emphasis added).

The district court's explanation of its sentence reflects that it understood Johnson's request for a variance but rejected it. The court explained at some length that Johnson's criminal history meant it did not find a below-guidelines sentence warranted. We conclude that the court's failure to explicitly cite in its reasoning the United States Sentencing Commission study that the defense had mentioned only orally, and briefly, at the sentencing hearing does not warrant a remand. *See United States v. Diekamper*, 604 F.3d 345, 355 (7th Cir. 2010) (stating "as long as a sentencing court considers the arguments made in mitigation, even if implicitly and imprecisely," sentence would be affirmed).

### C. Sexual Treatment Program as Condition of Supervised Release Was Error

Johnson also argues that the district court should not have imposed participation in a sexual treatment program as a condition of Johnson's supervised release. Johnson takes issue with the court's imposition as a special condition that Johnson "shall participate in an approved sexual offender treatment program, as directed by the probation officer." The court also directed that "if deemed necessary," Johnson "shall submit to an approved sexual-predator evaluation as directed by the probation officer." Johnson was ordered to

pay for the associated costs on a sliding fee scale as directed
by the Probation Office.

The government contends that we should review the
propriety of this special condition for plain error since John-
son did not object to it before the district court. But as John-
son points out, he had no notice that this condition was even
under consideration until the district court imposed it as
part of his sentence at the end of the hearing. The Presen-
tence Report had said nothing about such a condition. The
government had not requested it before or during the hear-
ing. And it was never discussed during the sentencing hear-
ing until the judge imposed it. As we recently discussed, "it
is difficult to prepare to respond to every condition of su-
pervised release that the judge may impose without any ad-
vance notice, given that the judge is empowered to impose
special conditions that are not listed in the guidelines, or an-
ywhere else for that matter." *United States v. Bryant*, No. 13-
3845, --- F.3d ---, 2014 WL 2612349, at *4 (7th Cir. June 12,
2014). In any event, we find the condition unwarranted un-
der either a plain error or abuse of discretion standard of re-
view. *Cf. United States v. Shannon*, 743 F.3d 496, 501 (7th Cir.
2014) (concluding special condition of supervised release re-
quired vacatur under either standard of review); *United
States v. Goodwin*, 717 F.3d 511, 521 (7th Cir. 2013) (same).

We recently discussed conditions of supervised release in
detail and emphasized that a judge's decision to impose any
discretionary condition must be made in compliance with
the sentencing factors in 18 U.S.C. § 3553(a). *United States v.
Siegel*, Nos. 13-1633 et al., --- F.3d ---, 2014 WL 2210762, at *2
(7th Cir. May 29, 2014); *see also* 18 U.S.C. § 3583(d); *Goodwin*,
717 F.3d at 521–22. Special conditions "'must be reasonably

related to (1) the defendant's offense, history and characteristics; (2) the need for adequate deterrence; (3) the need to protect the public from further crimes of the defendant; and (4) the need to provide the defendant with treatment.'" *Goodwin*, 717 F.3d at 522 (quoting *United States v. Angle*, 598 F.3d 352, 360–61 (7th Cir. 2010)); *see* 18 U.S.C. § 3553(a)(1)-(2). A special condition also must not involve a greater deprivation of liberty than is reasonably necessary to achieve the goals of deterrence, incapacitation, and rehabilitation. *Goodwin*, 717 F.3d at 522; *see also* 18 U.S.C. § 3553(a)(2); *Siegel*, 2014 WL 2210762 at *2. Finally, any condition must be "consistent with any pertinent statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(3); *Goodwin*, 717 F.3d at 522.

The government suggests that we need not decide this issue because a determination on its appropriateness could await Johnson's release from prison, when the probation officer may say that sex offender treatment is not necessary. *See* 18 U.S.C. § 3583(e)(2) (authorizing court to modify conditions of supervised release at any time). But the government acknowledges that Johnson is unlikely to have counsel at that point, and if we do nothing the default will be that the special condition is in place. *Cf. Siegel*, 2014 WL 2210762 at *2 (recognizing that supervised release modification is technically possible at any time but still a hassle). We decline to wait.

The district court gave no reason for imposing participation in a sex offender treatment program as a special condition of Johnson's supervised release in this drug and gun case. The government maintains we should nonetheless affirm the condition in light of Johnson's December 1997 con-

viction for criminal sexual abuse. When he was seventeen years old, Johnson had sex with a girl who was over the age of thirteen but less than seventeen. The result was a misdemeanor conviction for criminal sexual abuse in Illinois state court for which he received no jail time and a sentence of one year of probation. Johnson has no other sex-related offenses, nor are the instant offenses sex-related. Johnson does have convictions in two cases involving violence against women, but neither was a sex-related offense. He was convicted of home invasion in 1998 during which he struck a woman in the head. He also has a 2005 aggravated battery conviction for striking a woman on her head and body with a bludgeon. But neither incident, reprehensible as each is, evidences a need to provide Johnson with sex offender treatment nor involves the kind of offense sex offender treatment is designed to prevent.

So the only potential support in the record for the sex offender treatment condition is the 1997 misdemeanor. The government's appellate brief points out that the Presentence Report states Johnson was initially charged in the 1997 case with two criminal counts, including a count of felony criminal sexual assault alleging the use of force. Although that count was dropped when Johnson pled guilty to the misdemeanor, the government argues that the district court would have been justified in considering the felony charge when deciding whether sexual offender treatment was warranted here. But the record contains no information about the felony charge other than that it was dropped. This is not a situation comparable to a federal trial where a judge who has heard all the evidence can consider acquitted conduct at sentencing. *Cf. United States v. Waltower*, 643 F.3d 572, 577 (7th Cir. 2011) (upholding a judge's consideration of acquitted

conduct in sentencing determination). In those circumstances, while "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge," the court may do so only "so long as that conduct has been proved by a preponderance of the evidence." *United States v. Watts*, 519 U.S. 148, 157 (1997) (per curiam). The federal sentencing court in this case, in contrast, heard no evidence whatsoever about what happened in 1997, and there is no evidence whatsoever in the record of a forcible sexual assault. So, based on the evidence before the court, the sentencing court could not have found that Johnson acted with force in 1997 under any standard of proof. There's just no evidence of that. The dropped felony charge cannot support the sex treatment condition.

The question, then, is whether the 1997 misdemeanor could support the mandatory participation in a sex treatment program ordered by the judge in 2012. Our decision in *United States v. Evans*, 727 F.3d 730 (7th Cir. 2013), another case we decided after Johnson was sentenced, guides us here. In *Evans*, we considered a defendant's argument that he should not have received sex offender treatment as a special condition of supervised release because his conviction was not for a sex-related offense. We reviewed our sister circuits' decisions and concluded that "[t]he common theme of these decisions is that sex-offender treatment is reasonably related to the factors in Section 3553(a), even if the offense of conviction is not a sex offense, so long as the sexual offenses are recent enough in the defendant's history that the goals of rehabilitation and protecting the public justify an order for treatment." *Id.* at 735. And, we said, "[w]e agree with the other circuits that have held that there must be some nexus

shown between the sexual misconduct and applicability of the Section 3553(a) factors for the current offense." *Id.*

We do not see any link shown between Johnson's misdemeanor for having sex with someone who was between thirteen and seventeen when he was seventeen years old and the applicability of the Section 3553(a) factors for the current offense. A temporal connection could be one way to show the requisite connection. *See id.* at 735. For example, we found a sufficient connection in *Evans* where, although the defendant's federal offenses were only drug and gun crimes, he had pending state court charges for sexual abuse of a minor at the time of his sentencing. *Id.* When the district court learned he was convicted of the state offenses, it modified Evans's conditions of federal supervised release to include sex offender assessment and treatment. *Id.* at 731. We upheld that decision, reasoning that the sexual misconduct took place at nearly the same time as his drug and firearm offenses, and that at the time of the sentencing hearing, "the sexual offenses were not a remote part of his history, but instead part of his pending, unpunished criminal conduct." *Id.* at 735.

Here, in contrast, Johnson's sex-related misdemeanor occurred fifteen years before he was sentenced for the current offenses. The government has not explained why sex-offender treatment is necessary at this point to rehabilitate Johnson or to protect the public. There is no suggestion that Johnson has engaged in any sexual misconduct since the 1997 misdemeanor. A single misdemeanor for which Johnson received no jail time does not suggest that sexual misconduct is prominent in Johnson's behavior. And there is no suggestion that he is likely to commit any future sex-related offenses.

Other circuits have expressed similar concerns in similar cases, as we discussed in *Evans*. *See, e.g., United States v. Carter*, 463 F.3d 526, 532–33 (6th Cir. 2006) (finding sex offender treatment condition not supported by seventeen-year-old sex-offense conviction but remanding for determination of whether stalking conviction two years earlier was sexual in nature); *United States v. T.M.*, 330 F.3d 1235, 1240 (9th Cir. 2003) (vacating sex-offender treatment condition and stating "[s]upervised release conditions predicated upon twenty-year-old incidents, without more, do not promote the goals of public protection and deterrence"). The Eighth Circuit, for example, vacated a sex-offender treatment condition imposed for an armed robbery sentence that was predicated on a sexual offense fifteen years earlier where there was no evidence supporting the need for special conditions in his case. *United States v. Scott*, 270 F.3d 632, 633 (8th Cir. 2001). Our analysis of our sister circuits reflected that "[o]ther courts have upheld sex-offender treatment conditions when the sexual misconduct was so recent as to be a contemporary characteristic of the defendant's offender profile at the time of sentencing; they have vacated such conditions if the defendant's last incident of sexual misconduct is so remote in time that it does not support any present need to rehabilitate the defendant or protect the public." *Evans*, 727 F.3d at 734 (collecting cases).

Ours is the latter situation. Johnson's fifteen-year old sexual misconduct misdemeanor does not support any present need to provide just punishment for the instant offenses, to deter criminal conduct, to rehabilitate Johnson, or to protect the public. *Cf.* 18 U.S.C. § 3553(a)(2). We therefore vacate the special condition of probation stating that Johnson "shall

participate in an approved sexual offender treatment program, as directed by the probation officer."

### D. Conditions Inconsistent with Oral Sentencing Pronouncement

Johnson also argues that his judgment should be amended regarding two additional conditions of supervised release that were not contained in the judge's oral pronouncement at the sentencing hearing. "If an inconsistency exists between an oral and the later written sentence, the sentence pronounced from the bench controls." *United States v. Alburay*, 415 F.3d 782, 788 (7th Cir. 2005). The written amended judgment requires Johnson to participate as directed in an alcohol dependence program and says any such participation will require complete abstinence from alcoholic beverages. It also contains a special condition of supervision that authorizes the search of his "computer, electronic communication and data storage device or media." Neither alcohol nor the described searches were mentioned during the oral pronouncement of Johnson's sentence at the sentencing hearing. As a result, the government agrees with Johnson that the district court should issue a new judgment reflecting the sentence announced from the bench, and so do we. *See United States v. Baker*, No. 13-1641, --- F.3d ---, 2014 WL 2736016, at *6 (7th Cir. June 17, 2014); *Alburay*, 415 F.3d at 788; *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996).

### III. CONCLUSION

Johnson's conviction and prison term are AFFIRMED, but the special conditions of supervised release mandating participation in an approved sexual offender treatment program, requiring participation in an alcohol dependence pro-

gram, and requiring Johnson to submit his computer, electronic communication, and data storage device or media are VACATED. This case is REMANDED for further proceedings consistent with this opinion.