In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1208

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RONALD DOUGLAS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:14-CR-30069-001 — **David R. Herndon**, *Judge*.

ARGUED SEPTEMBER 22, 2015 — DECIDED NOVEMBER 25, 2015

Before FLAUM, WILLIAMS, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Appellant Ronald Douglas was convicted of failing to register as a sex offender. He does not challenge his conviction or his prison sentence of thirty months, but he challenges several conditions of his five-year term of supervised release. We affirm.

I. *Factual and Procedural Background*

Douglas has two prior convictions for criminal sexual abuse of children. He was convicted in 1992 of aggravated criminal sexual abuse of a young relative when he was babysitting her and other children. For that first offense, Douglas was sentenced to two years of probation but was also required to register as a sex offender under the Sex Offender Registration and Notification Act (SORNA). In 1997, he was sentenced to one year of unsupervised probation for failing to register as a sex offender.

In 1999, Douglas was convicted of aggravated criminal sexual abuse. The victim was another young relative. The crime occurred while Douglas was babysitting her and her brothers overnight at his home. That time he was sentenced to four years in prison.

After he was paroled in 2000, Douglas registered as a sex offender until January 2009. He let his registration lapse, then registered again in 2011 and 2012 but not after that. He has claimed he was confused about whether he was required to register for only ten years or for the rest of his life. Douglas was never given a notice that he was no longer required to register.

The present offense, a violation of 18 U.S.C. § 2250(a), stems from Douglas's move in 2012 from Illinois to Tennessee without notifying his Illinois probation officer and without registering as a sex offender in Tennessee. After Douglas was convicted in this case for his failure to register, the district court sentenced him to thirty months in prison, five years of supervised release, a $100 special assessment, and a fine of $250.

As part of the federal sentence, the district court imposed several special conditions of supervised release, including requirements that Douglas undergo assessment as a sex offender, stay out of establishments that primarily sell alcohol, avoid knowing association with felons, allow a U.S. Probation Officer to visit him at any time, and answer truthfully any questions asked by the probation officer. All of the challenged conditions had been set forth in the Probation Office's recommendations for sentencing that were filed with the presentence report and provided to the defense well in advance of the sentencing hearing. In the district court, Douglas did not object to any of these conditions, but he challenges them on appeal as unjustified restrictions on his liberty.

II. *Analysis*

A. *Standard of Review*

Over the past two years, this Court has addressed conditions of supervised release in an unusually large number of appeals. See, e.g., *United States v. Kappes*, 782 F.3d 828, 848 (7th Cir. 2015) (collecting cases). We recently explained:

> Under 18 U.S.C. § 3583(d), a sentencing court has discretion to impose appropriate conditions of supervised release, to the extent that such conditions (1) are reasonably related to factors identified in § 3553(a), including the nature and circumstances of the offense and the history and characteristics of the defendant; (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a); and (3) are consistent with the policy statements issued by the Sentencing Com-

> mission. Policies emphasized by the Sentencing
> Commission include deterrence, rehabilitation,
> and protecting the public.

*United States v. Armour*, 804 F.3d 859, 867 (7th Cir. 2015), quoting *United States v. Ross*, 475 F.3d 871, 873 (7th Cir. 2007).

When a defendant has objected to a condition of supervised release in the district court, we review for an abuse of discretion, but if no timely objection was raised in the district court, we review only for plain error. *Armour*, 804 F.3d at 867; *Kappes*, 782 F.3d at 844; *Ross*, 475 F.3d at 873. "The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case and district courts have an institutional advantage over appellate courts in making these sorts of determinations … ." *Kappes*, 782 F.3d at 844, quoting *Gall v. United States*, 552 U.S. 38, 51–52 (2007) (internal quotation marks omitted). This reasoning extends to the conditions of supervised release.

In this case, Douglas received advance notice that the district court might impose all of the challenged conditions of supervised release. They were filed with the presentence report as recommendations of the probation officer. Douglas did not register any objections to the conditions at the sentencing hearing. When such advance notice is not provided and the court springs the conditions of supervised release on the defense at the sentencing hearing itself, as for example in *United States v. Thompson*, 777 F.3d 368, 378–79 (7th Cir. 2015), we will not fault a defendant or his counsel for failure to object. On the other hand, when ample notice is given, as it was in this case, and the defense raises no objection to the proposed conditions of supervised release, it is appropriate to review on appeal only for plain error.

"To correct a plain error, the appellant must establish that there is: '(1) an error or defect (2) that is clear or obvious (3) affecting the defendant's substantial rights (4) and seriously impugning the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Cary*, 775 F.3d 919, 923 (7th Cir. 2015), quoting *United States v. Goodwin*, 717 F.3d 511, 518 (7th Cir. 2013). We address the conditions in turn.

B.  *The Challenged Conditions*

1.  *Sex-Offender Assessment and Potential Treatment*

The first challenged condition orders Douglas to submit to a sex-offender assessment upon release from prison. If the assessment recommends sex-offender treatment, he will be required to "comply with the sex-offender specific treatment that is recommended." The district court explained that it was imposing this condition based on Douglas's recidivism in sexual abuse of children and the belief that he "will not be rehabilitated in prison and will need close supervision while on supervised release, as history demonstrates [and] congress mandates."

Douglas argues that requiring a sex-offender assessment is not justified because his sex offenses occurred so long ago and he is now sixty years old. He relies on *United States v. Johnson*, 756 F.3d 532, 540–42 (7th Cir. 2014) to support his argument. In *Johnson*, we set aside a supervised release condition for sex-offender treatment, finding no link between the defendant's misdemeanor sex offense fifteen years earlier and the applicable § 3553(a) factors for the drug and firearm offenses at issue. 756 F.3d at 541. There was no suggestion that the defendant had engaged in any sexual misconduct since the single misdemeanor. The government had not ex-

plained why sex-offender treatment was needed to rehabilitate the defendant or to protect the public. We further noted that other circuits have "upheld sex-offender treatment conditions when the sexual misconduct was so recent as to be a contemporary characteristic of the defendant's offender profile at the time of sentencing; they have vacated such conditions if the defendant's last incident of sexual misconduct is so remote in time that it does not support any present need to rehabilitate the defendant or protect the public." *Id.*, quoting *United States v. Evans*, 727 F.3d 730, 734 (7th Cir. 2013).

*Johnson* is instructive, but the significant factual differences persuade us that the district court did not commit a plain error here. First, the condition here calls only for sex-offender assessment, not treatment. Sex-offender treatment will be ordered only if recommended based on the assessment. Second, Douglas is a repeat sex offender. The seven years that passed between his first and second convictions for sexually abusing children in his care suggest that the passage of time did not sufficiently reduce the risk of recidivism for this defendant. There is also no indication in this record that Douglas has undergone sex-offender assessment before, let alone treatment. Third, unlike *Johnson*, the district court explained sufficiently why this condition is appropriate based on Douglas's criminal sexual conduct and the need to protect the public. We find no plain error in the district court's decision to order this first-ever assessment for a defendant who has twice been convicted of sexually abusing children in his care.

Douglas raises two additional points regarding this condition. He worries that allowing the entity performing the assessment to provide any follow-up treatment poses a con-

flict of interest, and he argues that if treatment is ordered, he is being ordered to comply with unspecified and unknown restrictions. Neither challenge is ripe for prudent disposition at this time. Neither could be addressed based on anything other than speculation unless and until Douglas and the court know whether sex-offender treatment will be ordered and if so with what restrictions. Under 18 U.S.C. § 3583(e)(2), a sentencing judge "may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." If and when these other issues that trouble Douglas become ripe, he may raise any challenges to them under § 3583(e)(2).

### 2. *Establishments That Sell Primarily Alcohol*

The district court also ordered that Douglas "not enter or patronize establishments where intoxicants are the primary item of sale, such as bars, lounges, and night clubs." When imposing the condition, the court pointed out that Douglas committed at least one of his sexual crimes when he was abusing alcohol. The court also said that "Douglas's primary problem is his alcohol abuse," and that "it's quite clear, from the notations throughout his criminal history and other places in the presentence report, that he has a serious alcohol abuse problem."

While acknowledging a connection between his alcohol use and his past sexual crimes against children, Douglas contends that this condition imposed on top of conditions to refrain from alcohol use and to comply with testing and treatment for alcohol abuse is not sufficiently justified. He also argues that the condition will hinder his ability to work because he has often worked in restaurants.

We find no plain error. As required by 18 U.S.C. § 3583(d), this condition is reasonably related to factors identified in § 3553(a), particularly the history and characteristics of the defendant. The district judge could reasonably find that this condition will impose no greater deprivation of liberty than is reasonably necessary for the purposes of supervised release. See *Armour*, 804 F.3d at 867, quoting *Ross*, 475 F.3d at 873. The condition does not prohibit Douglas from entering, patronizing, or working in restaurants. It applies only to establishments where alcohol is the *primary* item of sale. The condition will bar Douglas from working in liquor stores, bars, lounges, and nightclubs, but it should leave ample room to seek work, including restaurant work he has done before.

### 3. *Conditions for Effective Supervision*

Douglas also challenges the conditions that he must "permit a probation officer to visit him at any time at home or elsewhere," "not knowingly associate with any persons engaged in criminal activity and shall not knowingly associate with any person convicted of a felony, unless having first been granted permission to do so by the probation officer," and that "truthfully and completely answer all verbal questions of the probation officer and … follow the instructions of the probation officer." Douglas argues that these conditions will unduly restrict his constitutional liberties while he is on supervised release.

We reject these challenges. We are talking about *supervised* release, not complete release. This is not the first time Douglas has been under court-ordered supervision. By the time he was sentenced in this case, Douglas had put together a record of resistant and criminal conduct that earned these

conditions. The judge explained that these conditions were imposed to "assure that the probation officer is able to insure compliance from a defendant who's resistant to comply with his requirements under the sex-offender registration laws and who is a recidivist generally … ." These conditions of supervision were imposed to "do more for protecting the public as we go down the road."

The Supreme Court has made clear that persons on probation, parole, supervised release, or other forms of criminal justice supervision short of full-time custody are not entitled to the full range of constitutional liberties. "To a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only … conditional liberty properly dependent on observance of special [probation] restrictions.'" *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987), quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). "These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed." *Griffin*, 483 U.S. at 875. "Supervision, then, is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." *Id*. In light of these considerations, we address each challenged condition in turn.

### a. *Probation Officer Visits*

The district court must take care to ensure that supervised release conditions are supported by the applicable § 3553(a) factors. See *Kappes*, 782 F.3d at 845; *United States v. Siegel*, 753 F.3d 705, 707–08 (7th Cir. 2014); *Ross*, 475 F.3d at 873. In *United States v. Thompson*, this Court held that a condition of supervised release permitting the probation officer

to visit at any time at home or elsewhere was "too broad in the absence of any effort by the district court to explain why [it is] needed." 777 F.3d 368, 379–80 (7th Cir. 2015); see also *Kappes*, 782 F.3d at 850–51; *United States v. Sewell*, 780 F.3d 839, 850–52 (7th Cir. 2015); *United States v. Sandidge*, 784 F.3d 1055, 1068–69 (7th Cir. 2015) (vacating similar conditions). On the other hand, when the court provides an adequate explanation and the condition is related to the goals of probation and rehabilitation, we have upheld similar conditions. See *Armour*, 804 F.3d at 870 (holding similar condition reasonably related to rehabilitation and protecting the public); *United States v. Monteiro*, 270 F.3d 465, 469 (7th Cir. 2001) (upholding condition permitting a warrantless search at any time because it related to goals of rehabilitation and protection).

Here, the district court explained sufficiently why these conditions for supervised release were necessary. Douglas has been very resistant to supervision, as shown by his recidivism, continued failure to register, and alcohol abuse while on supervised release. This stringent visiting condition will enable close supervision, without loopholes. If it turns out that the visiting condition is abused, Douglas can seek relief, but as a rule, United States Probation Offices are not so overstaffed that they have time to waste on pointless harassment. The problem in *Thompson*, where no explanation was provided, is not present here. This condition of supervised release reflects the court's careful consideration advised in *Siegel* and *Thompson* and applies the statutory sentencing factors set forth in § 3553(a). To the extent Douglas argues the judge's explanation of his reasons for imposing this condition was not sufficient, recall that Douglas did not object to it. Given Douglas's well-documented record of trouble with

the criminal justice system, including similar forms of non-custodial supervision, we have no doubt the judge could have explained his reasons in even greater and more compelling detail. The court did not plainly err by requiring Douglas to permit visits by the probation officer at any time.

b. *Associating with Felons*

In *Thompson*, we found fatally vague a condition forbidding the defendant from "associat[ing] with any person convicted of a felony, unless granted permission to do so by the probation officer." 777 F.3d at 376–77. We reached this conclusion because there was no stated requirement that the defendant *know* that a person was a convicted felon. *Id*. at 377. In *Thompson*, we said that, "to protect himself [the defendant] would have to submit the name of any person he met to his probation officer" and that the word "association" was unclear. *Id*. Similarly, in *Kappes*, we found the condition forbidding a defendant from "associating with any persons engaged in criminal activity and associating with any person convicted of a felony, unless granted permission to do so by the probation officer … fatally vague because it appears to impose strict liability and does not define 'associate.'" 782 F.3d at 848–49 (internal quotation marks and alterations omitted).

The strict liability concerns from *Thompson* and *Kappes* are not present here. The condition imposed for Douglas states that he shall not *knowingly* associate with any persons engaged in criminal activity or with any person convicted of a felony. The condition also specifies that Douglas may seek permission from his probation officer if he wants to associate with convicted felons. Consider, for example, the possibility that he might want to associate with others with felony rec-

ords in a job, a church, or an alcohol abuse treatment program. Similarly, if Douglas genuinely did not understand what is meant by "associate," he should have raised the issue with the district court. He did not. With the knowledge requirement and ample room for exceptions, the district court did not plainly err by imposing this condition.

c. *Answer Questions*

Finally, Douglas argues that the supervised release condition requiring him to answer the probation officer's questions violates his Fifth Amendment privilege against self-incrimination. We disagree.

The Supreme Court has held that a probationer's "general obligation to appear and answer questions truthfully did not in itself convert … otherwise voluntary statements into compelled ones." *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984). The Court compared a probationer's duty to answer questions by a probation officer to an ordinary witness's duty to answer questions under oath at a trial or before a grand jury. If a witness is asked a question that will elicit incriminating evidence, the witness himself must ordinarily assert the privilege against self-incrimination. See *id*.

So too here. Douglas may invoke the privilege against self-incrimination if he wishes not to incriminate himself. If he chooses not to invoke the privilege and answers, his responses will be considered voluntary. This condition does not eliminate Douglas's right to invoke the privilege against self-incrimination and was not imposed in error.

In *Thompson*, this court held that conditions providing that "the defendant shall answer truthfully all inquiries by the probation officer and that he shall permit a probation of-

ficer to visit him or her at any time at home or elsewhere" were too broad in the absence of any effort by the district court to explain why they were needed. 777 F.3d at 379–80 (internal quotation marks and alterations omitted); see also *Sewell*, 780 F.3d at 851; *Sandidge*, 784 F.3d at 1068–69.

Here, unlike in *Thompson*, the district court explained sufficiently why Douglas needs close supervision. He has repeatedly failed to follow the law and to report information (e.g., his relocation to Tennessee) to those supervising him. The district court explained the need for this condition based on Douglas's recidivism, resistance to supervision, and lack of rehabilitation. The district court did not plainly err by imposing this condition.

For the foregoing reasons, the district court's judgment, with the challenged conditions of supervised release, is AFFIRMED.