In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1188

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LON CAMPBELL,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-CR-00185-018 — **Tanya Walton Pratt**, *Judge.*

ARGUED JANUARY 27, 2016 — DECIDED FEBRUARY 19, 2016

Before POSNER, KANNE, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Appellant Lon Campbell pled
guilty to using a social security number fraudulently. The dis-
trict court sentenced him to 21 months in prison followed by
three years of supervised release. He waived his right to ap-
peal the sentence in the written plea agreement. He has ap-
pealed nonetheless, contending that several conditions of his
supervised release are unconstitutionally vague. We enforce
the appellate waiver and dismiss the appeal.

Campbell had a poor credit history, so he devised a scheme to hide it. For $2,700, Campbell bought from his friend "Buster" a stranger's social security number and went to the Indiana Bureau of Motor Vehicles with the number and a fictitious address to obtain a new license. He then used the number to open three lines of credit at retail stores and purchase one vehicle. After the FBI investigated Buster's scheme, Campbell and his co-conspirators were indicted for wire, loan, and social-security fraud.

Campbell and the government reached a plea agreement. The government agreed to drop all but one count. Campbell agreed to plead guilty to one count of using a false security number with intent to deceive in violation of 42 U.S.C. § 408(a)(7)(B).

In return for the government's concessions, Campbell also expressly waived "his right to appeal his conviction on any ground" and "his right to appeal his sentence, including the right to appeal conferred by Title 18, United States Code, Section 3742, regardless of how the sentence and the offense level are calculated by the Court."

During the guilty plea hearing, the judge informed Campbell of his right to appeal the conviction and sentence, and Campbell acknowledged that he waived those rights. After accepting the guilty plea, the court immediately turned to sentencing. Neither party had filed a sentencing memorandum or objected to the presentence investigation report, which proposed both guideline calculations and conditions of supervised release.

The court sentenced Campbell to 21 months of imprison-
ment, which was the low end of the guideline range, con-
sistent with both the plea agreement and presentence report.
Those 21 months were to be served consecutively to 12
months of imprisonment imposed for violating terms of su-
pervised release in an earlier case. The sentence also included
about $15,000 in restitution.

Most relevant to this appeal, the court imposed three years
of supervised release subject to special and standard condi-
tions recommended in the PSR. In this appeal, Campbell ob-
jects to conditions requiring that he: (1) not leave "the judicial
district"; (2) "support" his family and meet family responsi-
bilities; (3) work "regularly" and notify his probation office of
changes in employment; (4) avoid "excessive" alcohol use; (5)
not knowingly "associate" with felons; and (6) permit regular
visits by a probation officer. Campbell immediately requested
an appeal but did not specify any grounds.

Two hours later, the judge reconvened the sentencing
hearing to put on the record her reasons for imposing the
standard conditions of supervised release. The parties voiced
two objections. Campbell objected to the condition that he
maintain "regular" employment; he feared that he would re-
turn to prison if he could not find a job. The judge explained
that he would not violate the condition on regular employ-
ment if he were looking actively for employment. That expla-
nation seemed to satisfy Campbell. The government asked the
judge to clarify the condition barring Campbell from "associ-
ating" with felons. The judge explained that he could not meet
with family members who are actively engaged in criminal
activity, but he could, for example, attend family functions
where a cousin with a felony record might also be present.

The court's written sentence added another standard con-
dition that had also been included in the presentence report
to which Campbell had filed no objections—a requirement
that he notify third parties of risks occasioned by his criminal
record, personal history, and characteristics.

On appeal Campbell argues that the conditions of super-
vised release identified above are unconstitutionally vague.
As a remedy, he wants those conditions vacated and a remand
for a full resentencing. We conclude, however, that Camp-
bell's appeal waiver requires dismissal of his appeal.

When a defendant has knowingly and voluntarily waived
his appellate rights, including a right to challenge a sentence
not yet imposed, and the terms of the waiver are express and
unambiguous, we will enforce the waiver. *United States v.
Smith*, 759 F.3d 702, 706–07 (7th Cir. 2014); *United States v.
Quintero*, 618 F.3d 746, 751 (7th Cir. 2010). An enforceable
waiver prevents challenges to the conditions of supervised re-
lease imposed as part of the sentence. See, e.g., *United States v.
Sines*, 303 F.3d 793, 798 (7th Cir. 2002). The waiver also gener-
ally bars review of constitutional errors, see *United States v.
Adkins*, 743 F.3d 176, 193 (7th Cir. 2014), or errors that are plain
in retrospect. *Smith*, 759 F.3d at 707. Campbell's waiver was
clear and broad and by its terms forecloses this appeal.

Campbell argues we should overlook his waiver. We have
allowed only a few narrow and rare exceptions to appeal
waivers. An appeal waiver does not prevent challenges to a
sentence based on a constitutionally impermissible factor
such as race, a sentence that exceeds the statutory maximum
for the particular crime, a proceeding lacking a "minimum of

civilized procedure," or ineffective assistance of counsel in negotiating the plea agreements. *United States v. Bownes*, 405 F.3d 634, 637 (7th Cir. 2005). None of those apply here.

Campbell relies on an exception we recognized in *United States v. Adkins*, 743 F.3d 176 (7th Cir. 2014), where one condition of supervised release prohibited the defendant from "patroniz[ing]" any place where "sexually stimulating material or sexually oriented material" is available, or viewing that material. We ruled that the condition was unconstitutionally vague and overbroad because it inhibited a wide range of activity protected by the First Amendment, like visiting a public library. *Id.* at 193–94.

Our reason for excusing an appellate waiver in *Adkins* does not apply here. We were concerned about the lack of "fundamental fairness" to a defendant who "cannot reasonably know" what kind of activity is prohibited, particularly when the prohibition might inhibit protected speech. *Adkins*, 743 F.3d at 193. But Campbell had ample opportunity in the district court to resolve any uncertainty in the meaning of his conditions, and the sentencing hearing was the time to raise objections. None of the challenged conditions involved constitutionally protected speech.

Campbell actually had two opportunities to seek clarification. First, his conditions of supervised release were included in the presentence report given to Campbell months before sentencing. See *United States v. Kappes*, 782 F.3d 828, 842–43 (7th Cir. 2015) (suggesting as best practice that district court provide advance notice of potential conditions). Campbell filed no objections to them. Second, when the court explained its rationale for the conditions, Campbell objected to only one of the conditions that he now challenges. He was concerned

about the condition requiring him to maintain "regular" employment, which the court clarified to his satisfaction. The court also clarified the meaning of "associating" with felons. If Campbell did not understand the other conditions, he could have said something to the sentencing judge; his silence undermines any belated claim of unfairness. See *United States v. Douglas*, 806 F.3d 979, 987 (7th Cir. 2015) (If defendant "genuinely did not understand what is meant by 'associate,' he should have raised the issue with the district court. He did not.").

In *Adkins* we were also concerned about the "fundamental legitimacy of the judicial process," 743 F.3d at 193, but Campbell has raised no concerns about the judicial process that require remand. See, e.g., *United States v. Hernandez*, 544 F.3d 743, 751 (7th Cir. 2008) (collecting cases where "unorthodox" practices excuse appellate waiver); *United States v. Josefik*, 753 F.2d 585, 588 (7th Cir. 1985) (trial by "12 orangutans" would invalidate conviction notwithstanding appellate waiver). Because the rationale that informed our decision in *Adkins* does not apply here, we will enforce the waiver.

We can of course imagine the possibility that a probation officer interprets the conditions unreasonably, though we have also noted the United States Probation Officers do not seem to have free time to harass supervisees gratuitously. See *Kappes*, 782 F.3d at 857–58; *Douglas*, 806 F.3d at 776. If Campbell encounters genuine issues when supervised release begins, he can seek modification under the authority of 18 U.S.C. § 3583(e)(2). See *United States v. Neal*, 810 F.3d 512, 516–18 (7th Cir. 2016); *United States v. Johnson*, 765 F.3d 702, 711 (7th Cir. 2014).

Because Campbell knowingly and voluntarily waived his right to appeal, he is barred from pursuing this appeal, which is DISMISSED.