2020 IL App (2d) 190445-U
No. 2-19-0445
Order filed December 23, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-777 |
| BRIAN GALLAS, | ) ) ) | Honorable Paul B. Novak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hudson and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) Trial court's improper jury instructions were harmless beyond a reasonable doubt where evidence that defendant had committed domestic battery was clear and convincing; (2) in order to prove that the defendant committed aggravated domestic battery against the victim, the State was not obligated to prove that the defendant harmed someone other than the victim; (3) defendant's conviction for unlawful restraint reversed for violating one-crime, one-act principles; (4) term of defendant's probation prohibiting him from using any medicine or hygiene products containing alcohol vacated.

¶ 2    Following a jury trial, the defendant, Brian Gallas, was convicted of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2018)) and unlawful restraint (720 ILCS 5/10-3(a) (West 2018)) and was sentenced to 180 days' imprisonment, 24 months of probation, 6 months of

periodic imprisonment, and 100 hours of community service. On appeal, the defendant argues that his conviction for aggravated domestic battery should be reversed. Alternatively, he argues that his conviction for unlawful restraint should be vacated because his convictions for both aggravated domestic battery and unlawful restraint violate one-act, one-crime principles. The defendant further argues that some of the terms of his probation should be vacated for being improper and unreasonable. For the reasons that follow, we affirm in part, reverse in part, and modify the defendant's sentence.

¶ 3                                    I. BACKGROUND

¶ 4        On April 25, 2018, the State charged the defendant by indictment with aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2018)) and unlawful restraint (720 ILCS 5/10-3(a) (West 2018)). The charges alleged that, on April 6, 2018, the defendant attempted to strangle his then-fianceé, Lauren Kraemer.

¶ 5        Between January 14 and 16, 2019, the trial court conducted a jury trial on the charges against the defendant. Kraemer testified that, on April 6, 2018, she spent the evening with the defendant at the Deerpath Inn in Lake Forest. The defendant's brother was to be married there the following day. After attending the rehearsal dinner, where they both consumed several alcoholic beverages, they returned to their room. While there, they both continued to drink alcohol from the mini-bar. After they had finished drinking and watching a movie, the defendant wanted to have sex. Kraemer became annoyed and shoved the defendant away from her. The defendant responded by slapping her in the face and throwing her down onto the bed. While on the bed, the defendant put his arm around her neck and strangled her for what seemed like one to two minutes.

¶ 6        She was eventually able to get off the bed and started grabbing her belongings. However, the defendant grabbed her neck from behind and again threw her onto the bed. The defendant then

climbed on top of her and began hitting her repeatedly and pushed her head into the headboard a few times. The defendant bit her in the face, on her back, and on her right knee. The defendant kept saying that he wanted to kill her. Kraemer was eventually able to leave the room after the defendant fell asleep.

¶ 7    The State introduced several photographs of Kraemer that depicted injuries to her face and neck. Kraemer testified that the photographs showed injuries that she received from the defendant on the night in question.

¶ 8    The defendant testified that, on the night in question, he did not make any sexual advances towards Kraemer. He cuddled up to her on the bed, but she shoved him so hard that he almost fell off. He cuddled up to her again, then fell asleep. The defendant awoke to Kraemer punching him in the stomach. In response, he accidently struck her in the face. He quickly apologized, but she punched him in the face and repeatedly slapped him—leaving his jaw bruised.

¶ 9    Kraemer, who is more than 4 inches taller and 50 pounds heavier than the defendant (she is 6'4 and weighs over 200 pounds), then climbed on top of him, holding his right hand with her left arm, placed her left hand over his face, smothering him into the mattress and making it difficult for him to breath. The defendant testified that, in self-defense, he then began to hit her in the chest to get her off of him. Because she was "going crazy," he reached up, grabbed her by her hair and threw her off of him. When he got up, she started attacking him again. He attempted to put her in a headlock. She kept trying to attack him, so he bit her. After this period of attacks from Kraemer, they both fell asleep.

¶ 10    Later, the defendant woke up and saw Kraemer, still heavily intoxicated, holding a duffel bag and attempting to leave the room. When he asked her where she was going, she charged at him with her duffle bag, knocked him down, and began hitting him with it. She was also kicking

him, so he grabbed her leg and pulled her to the ground. While they were both on the ground, she continued to kick him so, in self-defense, he bit her to try to make her to stop. As she kept attacking him, he again got behind her in an effort to curtail the attack. He pulled her on to the bed, and they both again fell asleep. When he awoke, he found that she was gone.

¶ 11    Following the testimony, the jury was provided, over the defendant's objection, with two non-Illinois Pattern Jury Instruction (non-IPI) instructions on aggravated domestic battery. The trial court also provided Illinois Pattern Jury Instruction, Criminal, No. 26.01R(5) (4th ed. 2000) (IPI Criminal 4th). The defendant objected to all of those instructions as not accurately stating the law. The defendant asserted that the instructions were inaccurate because they indicated he could be found guilty of aggravated domestic battery without also being guilty of domestic battery.

¶ 12    At the conclusion of its deliberations, the jury did not find the defendant guilty of domestic battery but found him guilty of aggravated domestic battery and unlawful restraint. Following the denial of his motion for a new trial, the trial court sentenced the defendant to 180 days' imprisonment, 24 months of intensive probation, 6 months of periodic imprisonment, and 100 hours of community service. Following the denial of his motion to reconsider sentence, the defendant filed a timely notice of appeal.

¶ 13                                    II.  ANALYSIS

¶ 14    The defendant's first contention on appeal is that the trial court improperly instructed the jury that they could convict him of aggravated domestic battery without first finding that he committed domestic battery. The defendant argues that the trial court's misstatement of the law requires us to reverse his conviction for aggravated domestic battery.

¶ 15    Jury instructions give the jurors the correct principles of law applicable to the facts so they can reach a correct conclusion according to the law and the evidence. *People v. Fuller*, 205 Ill. 2d

308, 343 (2002). In a criminal case, the applicable IPI "shall be used, unless the court determines that it does not accurately state the law." Ill. S. Ct. R. 451(a) (eff. Apr. 8, 2013). In determining the adequacy of instructions, a reviewing court will consider all the instructions as a whole to ascertain if they fully and fairly cover the law. *People v. Housby*, 84 Ill. 2d 415, 433-34 (1981).

¶ 16    Nonetheless, "[i]nstructional errors are reviewed under a harmless error * * * analysis," and "the test for harmless error in the context of an instructional error is whether the result at trial would have been different had the jury been properly instructed." *People v. Dennis*, 181 Ill. 2d 87, 95 (1998). "[T]he harmless error analysis requires, in the first instance, a determination of whether any error occurred-in other words, whether the instruction was correct. Second, if there was error in the instruction, we must then determine whether, in spite of that error, evidence of defendant's guilt was so clear and convincing as to render the error harmless beyond a reasonable doubt." *Id.* at 95-96. To show that the error was harmless, "the State must prove that the jury verdict would have been the same absent the error to avoid reversal." *People v. Crespo*, 203 Ill. 2d 335, 347 (2001).

¶ 17    In order to convict the defendant of aggravated domestic battery, the State must show that the defendant committed the predicate offense of domestic battery. 720 ILCS 5/12-3.3(a), (a-5) (West 2018); *People v. Gray*, 2017 IL 120958, ¶ 63. A person commits domestic battery if he or she knowingly, without legal justification, and by any means causes bodily harm to, or makes insulting or provoking physical contact with, "any family or household member." 720 ILCS 5/12-3.2(a)(1) (West 2018); Gray, 2017 IL 120958, ¶ 63

¶ 18    Here, the trial court's instructions were flawed because they did not indicate that domestic battery was a predicate offense of aggravated domestic battery. See *Gray*, 2017 IL 120958, ¶ 63. As such, the improper instructions caused the jury to find the defendant guilty of aggravated

domestic battery without being guilty of domestic battery. Nonetheless, the trial court's error was harmless beyond a reasonable doubt because evidence that the defendant had committed domestic battery was clear and convincing. See *Dennis*, 181 Ill. 2d at 95-96. The defendant acknowledged that he punched Kraemer in the face repeatedly and placed her in a chokehold until she calmed down. He also admitted that he held Kraemer's neck between his bicep and his forearm for some time. He also admitted biting her ear. The defendant's admissions, in conjunction with Kraemer's testimony and the photos depicting her injuries, convincingly established that that he had caused bodily harm to Kraemer. Further, since the defendant and Kraemer were fiances at the time of the incident, they were in family relationship for purposes of the statute. Accordingly, had the jury been properly instructed as to domestic battery, they would have found him guilty of that offense.

¶ 19    Another problem with the defendant's argument is that he is essentially arguing that the jury improperly rendered inconsistent verdicts when it found him guilty of aggravated domestic battery but not domestic battery. However, both the Illinois Supreme Court and the United States Supreme Court have stated that such an occurrence does not offend the constitution and such convictions can stand. *People v. Alexander*, 2017 IL App (1st) 142170, ¶ 38. In our supreme court's decision of *People v. Jones*, 207 Ill. 2d 122, 133-34 (2003), it adopted the rule that convictions cannot be challenged because they are inconsistent with acquittals on other charges. In *Jones*, our supreme court adopted the rule enunciated by United States Supreme Court *in United States v. Powell*, 469 U.S. 57 (1984), that the United States Constitution does not require consistency in criminal verdicts. *Jones*, 207 Ill. 2d at 133-34. In adopting *Powell*, the *Jones* court stated, "defendants in Illinois can no longer challenge convictions on the sole basis that they are legally inconsistent with acquittals on other charges." *Id.* We adhere to our supreme court's decision in *Jones* that the constitution does not require consistency in criminal verdicts.

¶ 20    The defendant's second contention on appeal is that the plain language of the aggravated domestic battery statute requires strangulation of "another person," meaning someone other than the victim of the underlying domestic battery. The defendant insists that because no evidence was presented of him strangling someone other than the victim, his conviction for aggravated domestic battery must be reversed.

¶ 21    Section 12-3.3(a-5) of the Criminal Code of 2012 provides that "A person who, in committing a domestic battery, strangles another individual commits aggravated domestic battery." When interpreting a statute, our primary objective is to give effect to the legislature's intent. *McVey v. M.L.K. Enterprises, LLC*, 2015 IL 118143, ¶ 11. The most reliable indicator of that intent is the language of the statute. *Id.* Statutory language is to be given its plain, ordinary, and popularly understood meaning and afforded its fullest meaning. *In re Detention of Lieberman*, 201 Ill. 2d 300, 308 (2002).

¶ 22    Here, section 12-3.3(a-5)'s reference to "another person" means someone other than the defendant. See *People v. Bensen*, 2017 IL App (2d) 150085, ¶ 23. Thus, the State only had to prove that the defendant strangled the victim, not some other person. To hold otherwise would be contrary to the plain and ordinary language of the statute. See *Lieberman*, 201 Ill. 2d at 308.

¶ 23    The defendant's third contention on appeal is that his conviction for unlawful restraint should be vacated because it was based on the same act as his conviction for aggravated domestic assault. "The one-act, one-crime doctrine, articulated in *People v. King*, 66 Ill. 2d 551, 566 (1977), provides that multiple convictions are improper where (1) only one physical act was manifested, or (2) multiple acts were manifested, but some of the convictions are for included offenses." *People v. Isunza*, 396 Ill. App. 3d 127, 133 (2009). The rule requires a two-part analysis. "A court must first determine whether a defendant's conduct consisted of separate acts or a single physical

act." *Isunza*, 396 Ill. App. 3d at 133; see *People v. Rodriguez*, 169 Ill.2d 183, 186 (1996). An act is defined as " 'any overt or outward manifestation which will support a different offense.' " *Rodriguez*, 169 Ill.2d at 188, quoting *King*, 66 Ill. 2d at 566. "If only one physical act was undertaken, multiple convictions are improper. If separate acts were undertaken, a court must then ask whether any of the offenses are included offenses. If so, multiple convictions are improper." *Isunza*, 396 Ill. App. 3d at 133, citing *Rodriguez*, 169 Ill. 2d at 186. If a defendant is convicted of more than one crime arising out of the same act, the court must reverse all of the "same act" convictions except the most serious one. *People v. Lee*, 213 Ill. 2d 218, 226-27 (2004).

¶ 24    In the indictment, the defendant was charged with two counts of unlawful restraint. The first count alleged that the defendant prevented the victim from leaving the hotel room. The second count charged that the defendant restricted the victim's movement when he choked her. The State now acknowledges that the theory of unlawful restraint underlying the second count was inherent to the charge of aggravated domestic battery by strangulation. Thus, the defendant cannot be convicted of the second count because that conviction would violate one-act, one-crime principles. See *Isunza*, 396 Ill. App. 3d at 133.

¶ 25    The defendant also argues that he cannot be convicted of the first count because at trial the State merged the two counts into one. The defendant first points to the State's closing argument where it argued:

> "With respect to unlawful restraint, she was not able to move while she was being choked; and also, when she tried to escape, he grabbed her, pulled her back in, threw her across the table onto the bed. She was not free to leave, and she was in such fear that she laid in bed afraid to move, afraid to speak or do anything for fear of waking him up."

The defendant secondly points to the jury instructions where only one instruction was given as to unlawful restraint.

¶ 26    The defendant's argument is meritorious for two different reasons.  First, as we interpret the State's comments as merging the two counts into one, we must reverse the unlawful restraint conviction because it is premised on the defendant's strangulation of the victim.  This holding is consistent with the fact that only one instruction was given to the jury covering unlawful restraint.  The jury was therefore put in the position that it could find that the sole reason that the defendant committed unlawful restraint was because he strangled the victim.

¶ 27    The second basis to vacate the defendant's conviction for unlawful restraint is because we interpret the State's closing argument as being that the defendant committed both aggravated domestic battery and unlawful restraint as part of a single course of conduct.  "In determining whether the defendant's conduct constitutes a single physical act, courts consider: (1) the prosecutorial intent, as reflected in the language of the charging instrument; (2) the existence of an intervening act; (3) a time interval between successive parts of the defendant's conduct; (4) the similarity of the acts; and (5) the location of the acts."  *People v. Murphy*, 261 Ill. App. 3d 1019, 1023 (1994).

¶ 28    In *Murphy*, the defendant was convicted of aggravated unlawful restraint and aggravated assault, stemming from a domestic dispute.  There, the defendant had restrained the victim in a car while threatening her at gunpoint, letting her move so she could console her daughter, before then forcing her to drive to a park, again at gunpoint.  *Id.*  On appeal, the State argued that separate acts had occurred: The first was pointing the gun at the victim (aggravated assault), the intervening was when defendant allowed the victim to console her daughter, before forcing her at gunpoint to drive him to a park (aggravated unlawful restraint).  *Id.* at 1024.  This court disagreed, reasoning: "[t]he

aggravated unlawful restraint was a continuing offense which began when defendant pointed the gun at [the victim], thereby preventing her from leaving the car." *Id.* at 1024. As a result, it found that the offenses were predicated on the same act and vacated the conviction for aggravated battery. *Id.*

¶ 29 Here, the defendant's actions of assaulting the victim and preventing her from leaving the room was a continuing offense. See *id.* at 1024. Thus, we hold this is an alternate basis to reverse the defendant's conviction for unlawful restraint as well.

¶ 30 The defendant's final contention on appeal is that some of the terms of his probation were improper and therefore should be vacated. Courts have broad discretion to impose probation conditions, whether expressly allowed by statute or not, to achieve the goals of fostering rehabilitation and protecting the public. *In re J.W.*, 204 Ill. 2d 50, 77 (2003). Of course, the wide latitude given to courts in setting conditions of probation is not boundless. *People v. Harris*, 238 Ill. App. 3d 575, 580, (1992). The court's discretion is limited by constitutional safeguards and must be exercised in a reasonable manner. *Id.* at 581. When assessing the reasonableness of a condition of probation it is appropriate to consider whether the restriction is related to the nature of the offense or the rehabilitation of the probationer. *Meyer*, 176 Ill.2d at 378; *Pickens*, 186 Ill.App.3d at 460. Other considerations are whether (1) the condition of probation reasonably relates to the rehabilitative purpose of the legislation, (2) the value to the public in imposing this condition of probation manifestly outweighs the impairment to the probationer's constitutional rights, and (3) there are any alternative means that are less subversive to the probationer's constitutional rights, but still comport with the purposes of conferring the benefit of probation. *Harris*, 238 Ill. App. 3d at 582.

¶ 31    The defendant argues that it was improper for the trial court to impose probation conditions (1) requiring him to excise alcohol from his environment in any form; (2) allowing the probation department to search any device with internet access at their request; and (3) require him to explain his conduct on the night of the incident to the probation department as part of an "open mandate." The defendant asserts that none of those conditions were "narrowly drawn" but instead were standard ones, imposed as a matter of course, that were not connected to the crime or him.  He insists that the probation conditions are inherently unreasonable and impractical as they do not relate to the nature of the offense, foster rehabilitation, or provide a warranted public protection.

¶ 32    The defendant first complains that the trial court ordered that he not "be in any establishment whose primary purpose is the sale of alcohol."  The defendant asserts that this condition is unduly restrictive and impossible to comply with because he is unable to review a company's business records to determine whether their primary purpose is to sell alcohol.  The defendant contends that the term of probation is so vague that it could preclude him from going to restaurants that serve alcohol.

¶ 33    The seventh circuit of appeals addressed a similar argument in *United States v. Douglas*, 806 F.3d 979, 984-85 (7th Cir. 2015).  There, the district ordered that the defendant "not enter or patronize establishments where intoxicants are the primary item of sale, such as bars, lounges, and night clubs."  *Id.* at 984.  When imposing the condition, the district court pointed out that the defendant committed at least one of his sexual crimes when he was abusing alcohol.  *Id.*  The district court also found that the defendant's primary problem was his alcohol abuse.  *Id.*  On appeal, the defendant argued that the condition restricting his ability to patronize establishments that sold alcohol on top of the conditions that he refrain from alcohol use and get treatment for alcohol abuse was not sufficiently justified and it would hinder his ability to work because he had

often worked in restaurants. *Id.* The *Douglas* court rejected the defendant's argument, finding that the prohibition patronizing establishments where alcohol is the primary item of sale did not extend to restaurants. *Id.* at 985.

¶ 34 Here, we do not believe that the term of probation at issue is too vague. We believe that it applies to such places as bars, taverns and liquor stores. We agree with the *Douglas* court that the prohibition at issue does not extend to restaurants. Thus, the defendant's concern that he will be unable to go to restaurants is unfounded.

¶ 35 We next address the term of the defendant's probation that prohibits him from using any medicine or hygiene products that contain alcohol. The defendant complains that this condition is "foolish" and "overkill" as it would prevent him from using such things as mouthwash and hand sanitizer. The State responds that the condition is appropriate because it will "assist in his rehabilitation by preventing him recreating the situation" that led to the assault. We note that the record does not indicate that the defendant has previously abused medicine or hygiene products. We do not believe the value to the public in imposing this condition of probation manifestly outweighs the impairment to the defendant's constitutional rights. See *Harris*, 238 Ill. App. 3d at 582. Accordingly, we vacate that term of probation.

¶ 36 The defendant next complains of the probation term that prohibits him from "resid[ing] in any house, apartment unit, condominium unit or other location where alcoholic beverages are present or regularly consumed." The defendant argues that is an impermissibly vague restriction on his liberty of determining where he may reside. The State responds that the restriction just means that he may not keep alcoholic drinks in his residence. We agree with the State and believe that the trial court did not abuse its discretion in imposing that term because it is consistent with the goal of prohibiting the defendant's use of alcohol.

¶ 37 We next turn to the defendant's argument that the probation terms allowing the probation department to search his electronics and electronic communication was both unreasonable and unconstitutional. He claims that there is no rational relationship to the offense, rehabilitation, or public protection as the charges against him did not involve the misuse of any technology. In response, the State argues that there is a connection to the offense because Kraemer testified that she received dozens of texts and calls from the defendant after the assault. Further, the State argues that it is implied that any search of the defendant's electronic devices must still be reasonable. We agree with the State.

¶ 38 A probationer's waiver of fourth amendment rights extends only to searches conducted upon a reasonableness standard, as any probation condition must be reasonable. *People v. Hammons*, 2018 IL App (4th) 160385, ¶ 38. As such, "the probationary condition that the defendant submit to searches by the probation officer contain[] an implied qualification that any such search be supported by 'reasonable suspicion of a probation violation.' " *Id.* (quoting *People v. Lampitok*, 207 Ill. 2d 231, 252-53 (2003)).

¶ 39 Based on the above law, we believe that the contested terms of probation mean that the probation department may only search the defendant's electronic devices if it reasonably believes that he has violated a material term of his probation, such as contacting Kraemer or placing an on-line order for alcohol. As such, we reject the defendant's argument that the probation terms are unreasonable or unconstitutional.

¶ 40 The final probation provision that the defendant complains of required an "open mandate" for him to explain his conduct to the probation department. The defendant argues that this provision is improper because it violates his fifth amendment right against self-incrimination. This same issue was considered by the seventh circuit in *Douglas*.

¶ 41    There, the *Douglas* court noted that the United States Supreme Court has held that a probationer's "general obligation to appear and answer questions truthfully did not in itself convert *** otherwise voluntary statements into compelled ones." *Id.*, quoting *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984).  The *Douglas* court explained that this means that a person may still invoke the privilege against self-incrimination even if he is on probation.  *Id.* at 987.

¶ 42    Accordingly, based on *Murphy* and *Douglas*, the defendant's concern that the probation term violates his fifth amendment right against self-incrimination is unfounded.  We therefore will not disturb that term of his probation.

¶ 43                              III.   CONCLUSION

¶ 44    For the reasons stated, we affirm the judgment of the circuit court of Lake County convicting the defendant of aggravated domestic battery; we reverse the defendant's conviction for unlawful restraint; and we modify the terms of his sentence.

¶ 45    Affirmed in part; reversed in part; sentence modified.